IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>                      Plaintiff,<br><br>vs.<br><br>$165,620.00 in UNITED STATES CURRENCY,<br>                      Defendant,<br><br>and<br><br>EMPYREAL ENTERPRISES, LLC.<br>                      Claimant. | Case No. 21-1215-HLT-KGG |

**MOTION TO SUPPRESS AND MEMORANDUM IN SUPPORT**

Claimant Empyreal Enterprises, LLC, by and through its attorneys, submits this Motion to Suppress. For the reasons set forth in the Memorandum in Support of Motion to Suppress that is set forth below, all evidence obtained from the vehicle stops on May 17, 2021, and May 18, 2021 must be suppressed because such evidence was obtained illegally, and Claimant must ultimately prevail on its claim to the entirety of the subject currency, because such currency was illegally seized.

**MEMORANDUM IN SUPPORT OF
MOTION TO SUPPRESS**

**I. NATURE OF THE MATTER**

Claimant Empyreal Enterprises, LLC (hereinafter "Empyreal") operates a cash-in-transit business in approximately 28 states. Empyreal offers a variety of cash management solutions including cash collection and transport, deposit validation at secure vault locations, and delivery of the cash into the national banking system for greater transparency and tracking. A significant

1

percentage of Empyreal's cash-in-transit business does not involve the cannabis industry. These clients include restaurants, convenience stores, and other cash-intensive businesses. With respect to its cannabis-industry clients, Empyreal contracts only with state-legal cannabis businesses that have established banking relationships with financial institutions with anti-money laundering law programs implemented pursuant to the 2014 FinCEN Guidance Regarding Marijuana-related Business ("2014 FinCEN Guidance") and applicable state-issued guidance. Empyreal's financial institution clients must also conduct extensive initial and on-going due diligence of cannabis industry customers to ensure compliance with their Bank Secrecy Act obligations and other regulatory requirements, including filing marijuana-related Suspicious Activity Reports (SARs) to comply with the 2014 FinCEN Guidance.

On May 17, 2021, and May 18, 2021, law enforcement in Dickinson County, Kansas stopped an Empyreal vehicle driven by an Empyreal employee. During the vehicle stop on May 18, 2021, law enforcement seized the currency that is the subject of this lawsuit. However, because both vehicle stops were illegal, the evidence from those vehicle stops must be suppressed, and consequently, Empyreal should ultimately prevail on its claim to the entirety of the subject currency.

## II. STATEMENT OF FACTS

The facts relevant to this Motion to Suppress are the following:

1. On May 17, 2021, Dickinson County Sheriff's Detective Kalen Robison pulled over an Empyreal vehicle driven by an Empyreal employee eastbound on I-70 in Dickinson County, Kansas toward Kansas City, Missouri. It was stopped for an alleged covered license tag. (Deputy Wheeler video produced by the Plaintiff).

2. The Colorado license plate was not covered. (Deputy Wheeler video produced by the Plaintiff).

3. A photograph of the Colorado license plate as it appeared on May 17, 2021, is below:



(Representative photograph and based upon Deputy Wheeler video produced by the Plaintiff).

4. Deputy Robison then proceeded to question the Empyreal driver about the purpose of the trip, and the Empyreal driver answered all questions truthfully. (Deputy Wheeler video produced by the Plaintiff).

5. The driver explained that the vehicle was going to pick up cash proceeds from state-licensed medical cannabis dispensaries in Kansas City, Missouri the next day and then

transport those cash proceeds back on I-70 westbound across Kansas. (Deputy Wheeler video produced by the Plaintiff).

6. While being questioned and detained, the Empyreal driver provided the route manifest to Deputy Robison. (Deputy Wheeler video produced by the Plaintiff).

7. Dashcam footage recorded by Deputy Robison includes audio of phone calls between Deputy Robison and DEA Special Agent Bryson Wheeler during the May 17, 2021, stop. (Deputy Wheeler video produced by the Plaintiff).

8. Deputy Robison explained his understanding of Empyreal's cash-in-transit business, which was the result of the information provided to him by the Empyreal driver, to DEA Special Agent Wheeler. (Deputy Wheeler video produced by the Plaintiff).

9. In a subsequent phone call between Deputy Robison and DEA Special Agent Wheeler during the same May 17, 2021, stop, Agent Wheeler offered his theory about how it was allegedly illegal to take the proceeds from state-legal cannabis sales out of the state where the sale occurred. (Deputy Wheeler video produced by the Plaintiff).

10. Dashcam footage recorded by Deputy Robison also includes audio of a phone call between Deputy Robison and Special Assistant United States Attorney ("AUSA") Colin Wood during the May 17, 2021, stop. (Deputy Wheeler video produced by the Plaintiff).

11. Special AUSA Colin Wood tells Deputy Robison in reference to any currency: "I think -- I think I'd take it. . . . And we'll – and we'll argue about it." At one point, AUSA Colin Wood suggests they get a warrant. (Deputy Wheeler video produced by the Plaintiff)

12. Deputy Robison's dashcam video records him repeatedly talking with other deputies, Special AUSA Colin Wood, and DEA Special Agent Bryson Wheeler about waiting until the next day to seize the Empyreal vehicle on its return trip, because there is likely nothing in the vault now, since it is making its currency pickups the next day. (Deputy Wheeler video produced by the Plaintiff).

4

13. For example, Deputy Robison says:
    a. "See, her -- her time wasn't until tomorrow to start picking up. Um, I wonder if we can wait until tomorrow."
    b. "I think I'm going to kick this and get it tomorrow."
    c. "I'm going to kick her in hopes to get her tomorrow with this money."
    d. "So I'll – we'll just put it in and we'll take them down on the westbound." (Deputy Wheeler video produced by Plaintiff).
14. In yet another phone call with DEA Special Agent Bryson Wheeler during the May 17, 2021, stop, Deputy Robison says: "I didn't know if you guys wanted to maybe set up on this and get her ass com[ing] back. Because I talked to Colin Wood. And Colin Wood's like absolutely, that's – that's cash -- bulk cash smuggling right there at its finest." (Deputy Wheeler video produced by the Plaintiff)
15. The Empyreal driver continued to be detained on the side of the road for over 40 minutes during the duration of the stop, including all of Deputy Robison's phone calls. (Deputy Wheeler video produced by the Plaintiff).
16. Deputy Robison released the Empyreal driver without issuing a traffic citation. He further removed the license tag holder he claimed was offensive. (Deputy Wheeler video produced by the Plaintiff).
17. During all of the interaction during the stop, the driver never mentioned the words cannabis, marijuana or any other term for a controlled substance. (Deputy Wheeler video produced by the Plaintiff).
18. The driver was then surveilled by DEA the next morning, May 18, 2021, as the Empyreal vehicle visited state-legal medical cannabis dispensaries in or near Kansas City, Missouri to make lawful pickups and deliveries. (Plaintiff's Bates stamped documents (0000-0015)

19. DEA took photos of the Empyreal driver visiting state-legal medical cannabis dispensaries in or near Kansas City, Missouri. (Plaintiff's Bates stamped documents (0000-0015).

20. By information and belief, the agent never left his vehicle, saw any currency or witnessed any crime. (Plaintiff's Bates stamped documents (0000-0015).

21. The DEA then continued conducting surveillance on the Empyreal vehicle by following it on I-70 westbound in an unmarked vehicle until it entered Dickinson County, Kansas and could be handed off to Deputy Robison, who was waiting in a marked police vehicle. (Deputy Wheeler video produced by the Plaintiff).

22. On May 18, 2021, the same Empyreal driver and Empyreal vehicle were again pulled over in a vehicle stop by Dickinson County Sheriff's Deputy Kalen Robison while travelling westbound on I-70 in an Empyreal vehicle from Kansas City, Missouri.

23. The vehicle contained approximately $165,620 in cash proceeds from state-legal medical cannabis dispensaries in Kansas City, Missouri to financial institutions in other states. (Deputy Wheeler video produced by the Plaintiff).

24. Deputy Robison did not inform the Empyreal driver of any traffic violations. (Deputy Wheeler video produced by the Plaintiff).

25. The vehicle stop on May 18, 2021 was planned in advance and coordinated by Dickinson County Sheriff's deputies and one or more of the Federal Agencies including DEA and the local DEA task force. (Deputy Wheeler video produced by the Plaintiff).

26. Dashcam footage recorded by Deputy Robison shows him almost immediately asking the Empyreal driver: "So you went and picked up some money from the dispensaries, correct?" After the driver responds affirmatively, Deputy Robison says: "So I'm searching that vehicle and I'm seizing any money that's inside that vehicle." (Deputy Wheeler video produced by the Plaintiff).

27. There was no legitimate reason for the vehicle stop on May 18, 2021; the stop was entirely pretextual, and the Empyreal driver committed no crime nor traffic infraction. (Deputy Wheeler video produced by the Plaintiff).

28. Dickinson County Sheriff's deputies, working in conjunction with a DEA task force, detained and interrogated the Empyreal driver for at least one hour, searched the vehicle, gained access to the secured vault, and seized the $165,620 that is the subject of this lawsuit. (Plaintiff's Bates stamped documents (0000-0015).

29. No warrant was obtained to search the vehicle or seize its contents, despite having nearly twenty-four hours to get one. (Plaintiff's Bates stamped documents (0000-0015).

30. Before filing the instant action, the video evidencing the search of the vehicle was destroyed by Dickinson County. The DEA and the Dickinson County Sheriff failed to preserve such. (Per Plaintiff's counsel)

### III.  STATEMENT OF THE ISSUE PRESENTED

All evidence obtained from the vehicle stops on May 17, 2021, and May 18, 2021, should be suppressed because it was obtained illegally.

### IV.  ARGUMENTS AND AUTHORITIES

Motions to suppress are appropriate in the context of forfeiture cases, like this one. *See, United States v. One 1984 Chevrolet Corvette VIN No. 1G1AYO782E5124671*, 773 F. Supp. 1466 (D. Kan. 1991). "Although inherently civil in nature, forfeiture proceedings are not to be effectuated in derogation of one's constitutional rights." *United States v. $3,799.00 in U.S. Currency*, 684 F.2d 674, 677 (10th Cir. 1982). "The inadequacy of the process used to secure possession may defeat the government's right to possession, at least to the extent that the government may be barred from introducing evidence illegally seized in violation of the Fourth

7

Amendment to prove its claim to forfeitability." *Id*. "Forfeitures are clearly not favored and are to be enforced only when within both the spirit and letter of the law." *Id*. at 676–77.

Here, the vehicle stops of Empyreal's vehicle on May 17, 2021 and May 18, 2021 violated the Fourth Amendment.

### A. Empyreal Has Fourth Amendment Standing To Challenge The Subject Search.

"The Fourth Amendment right against unreasonable searches is personal and may not be asserted vicariously." *One 1984 Chevrolet Corvette,* 773 F. Supp. at 1469. "Consequently, a search may not be challenged unless the challenger demonstrates that his own constitutional rights were violated." *Id*. "Standing is assessed upon two factors: whether the individual has displayed a subjective expectation of privacy and whether that subjective expectation is one that society is ready to recognize as reasonable." *Id*. While not dispositive of the issues, ownership or lawful possession is often a dispositive factor. *Id*. "[O]ne who owns or lawfully possesses or controls property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude [others]." *Id*. (quoting *Rakas v. Illinois*, 439 U.S. 128, 143 n. 12 (1978)).

Here, Empyreal owned the vehicle that was subject to the vehicle stops on May 17, 2021, and May 18, 2021, and from which the subject currency was seized. At the time of the vehicle stops, the vehicle was in the lawful possession of Empyreal. Accordingly, Empyreal clearly has standing to assert Fourth Amendment violations.

### B. The Vehicle Stop on May 17, 2021, was Unlawful.

The vehicle stop on May 17, 2021 violated the Fourth Amendment, because the prolonged detention was outside the scope of the stop, the officer's suspicion of any violation had dispelled, and the any consent to search was tainted.

"The detention of a driver, however brief, during the course of a routine traffic stop constitutes a seizure within the meaning of the Fourth Amendment." *United States v. Edgerton*, 438 F.3d 1043, 1047 (10th Cir. 2006). "[A] seizure that is lawful at its inception can violate the Fourth Amendment if its manner of execution unreasonably infringes interests protected by the Constitution." *Illinois v. Caballes*, 543 U.S. 405, 407, 125 S. Ct. 834, 837, 160 L. Ed. 2d 842 (2005). The lawful duration of a traffic stop is determined by the traffic stop's "mission." *Id.* "A seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." *Id.*

Not only is unreasonable prolongment unlawful, but a prolonged detention must be "reasonably related in scope to the circumstances which justified the initial stop." *United States v. Williams*, 403 F.3d 1203, 1206 (10th Cir. 2005). Any longer detention that could reasonably be seen as outside the scope of the underlying justification is only permissible under two circumstances: "(1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring; or (2) the initial detention changes to a consensual encounter." *United States v. Fisher*, 241 F.Supp.2d 1154, 1159 (D. Kan. 2002).

A seizure under the Fourth Amendment is unreasonable if the detention is not reasonably related to the scope of circumstances that warranted the original purpose of the stop. *United States v. Walker*, 933 F.2d 812, 816 (10th Cir. 1991). In *Walker*, an officer in Utah made a lawful stop of Mr. Walker for speeding. *Id.* at 813. Before approaching the vehicle, the officer ran an NCIC check on the vehicle, and then approached the vehicle and asked for Mr. Walker's driver's license and vehicle registration. *Id.* at 813-814. After Mr. Walker provided all necessary documentation to prove his identity and right to operate the vehicle, the officer questioned him about topics unrelated to the traffic violation. *Id.* at 814. The Tenth Circuit held that the detention

9

was unreasonable under the Fourth Amendment, due to the prolonging of the detention by the officer, which was significantly extended past the time necessary to issue a warning or citation. *Id.* at 816.

"An investigative detention must be temporary, lasting no longer than necessary to effectuate the purpose of the stop, and the scope must be carefully tailored to its underlying justification." *Vasquez v. Lewis*, 834 F.3d 1132, 1136 (10th Cir. 2016). In *Vasquez*, the Tenth Circuit stated that this "Court has repeatedly admonished law enforcement that once an officer has been assured that a temporary tag is valid, he 'should ... explain[ ] to Defendant the reason for the initial stop and then allow[ ] her to continue on her way without requiring her to produce her license and registration.'" *Id*. (quoting *United States v. Edgerton*, 438 F.3d 1043, 1051 (10th Cir. 2006)). After the commencement of a traffic stop, if at any moment any objectively reasonable, articulable suspicion that a traffic violation has occurred or is occurring no longer exists, that suspicion is dispelled. *United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994). In *McSwain*, the officer stopped a vehicle for being unable to read the expiration date of the license tag and to subsequently check on the validity. *Id.* at 560. After approaching the vehicle, the officer made the realization that the tag was valid, even before stepping up to speak to the driver. However, the officer continued the stop by questioning the driver, requesting identification and documentation, and then running a computer check on the documentation. *Id.* He proceeded to return the documentation but continued the stop with more questioning. *Id.* The Tenth Circuit held that the further detention, including the questioning and documentation request, exceeded the lawful limits of the investigative detention, which violated the Fourth Amendment rights of the driver and any occupants of the vehicle. Id. at 561-61. The Court reasoned that the only conduct necessary by the officer, after determining the validity of the tag,

10

was to communicate to the vehicle's occupants the reason for the stop, and to let them be on their way. *Id.* at 562. There was no reason to question the occupants in the first place, nor was there any reason to request their identification or any documentation. *Id*. The Court concluded that anything gained that exceeded the underlying justification of the stop, including questioning, was unlawfully obtained. *Id.* at 561.

In the instant matter, once Deputy Robison approached the vehicle and realized that the tag was valid, there was no longer any reasonable, articulable suspicion of a traffic violation. Like in *Vasquez* and *McSwain,* once the Deputy realized that it was a valid tag, any suspicion had been dispelled. However, Deputy Robison continued to illegally detain and question the driver. After determining the license plate's validity, Deputy Robison had no reason to request documentation from Empyreal's driver, or to question her about the purpose of her trip. All that was necessary, and allowed by law, at that point was to let her know why he stopped her, and to let her be on her way.

Furthermore, Deputy Robison's detention of Empyreal's driver on May 17, 2021, was not reasonably related to the scope of the traffic stop, and it was unduly prolonged. The reasoning in *Walker* applies here, because rather than simply issuing the driver a warning or actual citation, the officer unreasonably prolonged his detention of her by asking questions that were unrelated to the reason for the stop. Deputy Robison continued the detention with more questions about her business, eventually leading to her giving him the manifest of her trip. Deputy Robison used the manifest to hatch a plan with a DEA agent and Assistant U.S. Attorney to make another illegal vehicle stop of the Empyreal vehicle the next day.

Deputy Robison's search and seizure of the Empyreal vehicle and driver was also an illegal search because it was based on ineffective consent to search, if there was any consent.

11

The court have established a three-factor analysis to determine whether a search was voluntary that would "purge the primary taint of the illegal [seizure]." *United States v. Maez*, 872 F.2d 1444, 1453 (10th Cir. 1989). "These factors include '[t]he temporal proximity of the arrest and the confession, the presence of intervening circumstances, and particularly, the purpose and flagrancy of the official misconduct....'" *Id*. (quoting *Brown v. Illinois*, 422 U.S. 590, 603-04, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). If consent is not found to have been given under sufficient free will, then it must be suppressed as "fruit of the poisonous tree." *Id.* If a search was voluntarily consented to, then a search that precedes a Fourth Amendment violation is valid, but that voluntariness is determined by an analysis of the totality of the circumstances. *United States v. Fernandez*, 18 F.3d 874, 881 (10th Cir. 1994). The totality-of-the-circumstances analysis does not rely on one single fact. *Id.*

Here, even if it is assumed that the Empyreal driver consented to the search, the driver's consent on May 17, 2021, was tainted by the totality of the circumstances, specifically the conduct of Deputy. The facts here are similar to *Fernandez,* because the officer pulled over the driver for a minor traffic violation, wherein the officer not only unreasonably detained and questioned the driver, but also requested and searched the vehicle with no probable cause nor valid consent. Deputy Robison, after gathering the Empyreal driver's documentation, extensively questioned her on her whereabouts and the details of her being in Kansas. Next, he took her property to his car, where he contacted a DEA agent and AUSA, all without her knowledge. After doing so, he returned to the vehicle without her property to let her know of the situation, wherein she gave him additional information to supplement her earlier statements. This all led to Deputy Robison eventually performing a search of the vehicle, without probable cause nor valid consent. It was clear that the Empyreal driver was not free to leave, and the Deputy

kept her belongings until he was done with his illegal investigation. The Deputy did not communicate that the driver was not required to give consent to search. After weighing these factors against both the *Brown* factors, and the outcome of *Fernandez*, it is clear that the search on May 17, 2021, by Deputy Robison was without valid consent, and therefore was a Fourth Amendment violation.

Due to the Deputy's illegal conduct, the vehicle stop on May 17, 2021 violated the Fourth Amendment, and all evidence obtained from that stop must be suppressed.

**C. The Vehicle Stop and search on May 18, 2021 were Unlawful.**

The vehicle stop on May 18, 2021 also violated the Fourth Amendment, because there was no probable cause for the stop, and it was a warrantless search conducted at an improper time.

When conducting a routine traffic stop, "[it] is valid under the Fourth Amendment if the stop is based on an observed traffic violation, or if that officer has a reasonable, articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995). It is clear that on May 18, 2021, Deputy Robison did not make a valid traffic stop based on a violation of traffic law. Therefore, he had no probable cause to stop the vehicle in the first place, and he certainly had no probable cause to detain the driver, nor to seize and search the vehicle.

Because Deputy Robison made a vehicle stop without reasonable suspicion of a traffic law violation, then a warrant needed to have been obtained to search the vehicle. However, Deputy Robison did not obtain a warrant. The Deputy had been told to obtain a warrant by United States Attorney, Colin Wood. Robison failed to do so. There are exceptions to the warrant requirement, including the exigent circumstances doctrine. The exigent circumstances

doctrine creates an exception to the Fourth Amendment's requirement to obtain a warrant before a search. *See, Kentucky v. King*, 563 U.S. 452, 459-60, 131 S. Ct. 1849 (2011). Under the exigent circumstances doctrine, law enforcement officers may perform a warrantless search of a constitutionally-protected area for purposes of providing emergency aid to prevent imminent injury, if the law enforcement officers are in hot pursuit of a fleeing suspect, or if there is a need to prevent the imminent destruction of evidence. *Id*. at 460. There is absolutely no evidence that any of those exigent circumstances. Consequently, Deputy Robison could not use the exigent circumstances doctrine to justify his warrantless search.

### D. The Law Enforcement Officers Would Not Have Obtained The Evidence Without The Illegal Searches.

"The ordinary remedy in a criminal case for a violation of the Fourth Amendment is suppression of any evidence obtained during the illegal police conduct." *U.S. v. Olivares-Rangel*, 458 F.3d 1104, 1108 (10th Cir. 2006). Additionally, the court must also suppress any other evidence that is discovered as a direct result of the illegal search, which is also known as "fruit of the poisonous tree." *Id*. at 1108-09. In order to suppress such evidence discovered as a direct result of the illegal search, a party must show there is a factual nexus between the illegal search and the challenged evidence. *Id*. at 1108-09.

Here, the seizure of the subject currency would have never occurred, but for the illegal traffic stops and searches of May 17, 2021, and May 18, 2021. Accordingly, all of the evidence obtained including all evidence and statements, must be suppressed as the evidence obtained during the illegal searches is fruit of the poisonous tree. Consequently, the Empyreal must ultimately prevail on its claim to the entirety of the subject currency, because such currency was illegally seized.

## V.  CONCLUSION

For the reasons stated above, all evidence obtained by the law enforcement officers from the vehicle stops on May 17, 2021, and May 18, 2021, must be suppressed, and Empyreal's Motion to Suppress should be granted.

CAVANAUGH, BIGGS & LEMON, P.A.

By /s/ Thomas G. Lemon
   Thomas G. Lemon - 16120
   3200 S.W. Huntoon
   Topeka, Kansas 66604
   TEL: 785/440-4000
   FAX: 785/440-3900
ATTORNEYS FOR CLAIMANT

CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of October, 2022, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system which will send a notice of electronic filing to the attorneys of record.

CAVANAUGH, BIGGS & LEMON, P.A.

By /s/ Thomas G. Lemon
   Thomas G. Lemon - 16120
   3200 S.W. Huntoon
   Topeka, Kansas 66604
   TEL: 785/440-4000
   FAX: 785/440-3900
ATTORNEYS FOR CLAIMANT
